CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 25 2014

JULIA DUDLEY, CLERK
BY:

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TEDDY A. GREEN, | ) |
|     Plaintiff, | ) Civil Action No. 7:11CV00405 |
| v. | ) **MEMORANDUM OPINION** |
| ZACHRY INDUSTRIAL, INC., ET AL., | ) By: Hon. Glen E. Conrad |
|     Defendants. | ) Chief United States District Judge |

This case is presently before the court on (1) the defendant's motion to dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, to stay litigation and compel arbitration on an individual basis, and (2) the plaintiff's motion for leave to add party plaintiffs and file an amended complaint. For the reasons set forth below, the court finds that the instant dispute is subject to a valid and enforceable arbitration agreement. Therefore, the defendant's alternative motion to stay litigation and compel arbitration will be granted, and the plaintiff's motion will be denied.

## Background

The plaintiff, Teddy A. Green, brings this action on behalf of himself and all other former employees of the defendant, Zachry Industrial, Inc. ("Zachry")[*], who were terminated from employment at the MeadWestvaco plant in Covington, Virginia, on or about September 30, 2010. Zachry, a national, privately owned construction and industrial maintenance firm, contracted with MeadWestvaco to perform paper mill maintenance work. Zachry hired the plaintiff to work at the MeadWestvaco plant beginning on August 3, 2009. According to the

---

[*] Upon reviewing the defendant's Delaware Certificate of Amendment of Certificate of Incorporation, Virginia State Corporation Commissions, and Application for an Amended Certificate of Authority to Transact Business in Virginia, Docket Nos. 13-1 to 13-4, the court is convinced that Zachry Construction Corporation was the former name of Zachry Industrial, Inc., and is not a separate entity.

complaint, on September 29, 2010, the defendant announced its intention to lay off the employees at the MeadWestvaco facility the following day. On September 30, 2010, or shortly thereafter, the plaintiff and approximately 270 other employees were terminated.

On August 25, 2011, the plaintiff filed this class action lawsuit, alleging that the defendant violated several federal statutes in connection with the mass layoff at the MeadWestvaco plant. First, Green complains that Zachry did not provide the terminated employees with 60-days advanced written notice of their termination, and failed to pay the employees 60-days wages and benefits, as required by the Worker Adjustment and Retraining Notification Act ("WARN Act"). Next, Green asserts that Zachry failed to inform the terminated employees and their beneficiaries of their right to elect continued health insurance coverage at a subsidized rate, as required by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") and American Recovery and Reinvestment Act of 2009 ("ARRA"). Finally, Green alleges that Zachry neglected to notify the Plan Administrator about a COBRA-qualifying event, namely the mass layoff at the Covington facility, and failed to give participants and beneficiaries of the group health plan a Summary Plan Description, as required by the Employee Retirement Income Security Act of 1974 ("ERISA").

In response to the plaintiff's class action lawsuit, Zachry filed the instant motion to dismiss or, in the alternative, stay litigation and compel arbitration, under the Federal Arbitration Act, on the basis that each of Zachry's employees, including Green, had agreed in writing to adhere to the Zachry Dispute Resolution Process, which includes binding arbitration as its final step. Green opposed the defendant's motion, and also filed a motion seeking leave to add party plaintiffs and amend his complaint. The court held a hearing on the parties' motions on June 5, 2012. Because the plaintiff's opposition to the defendant's motion relied heavily upon a case on

appeal to the United States Court of Appeals for the Fifth Circuit, the court decided to hold this matter in abeyance pending the Fifth Circuit's decision. On December 3, 2013, the Fifth Circuit issued an opinion in that case. The parties have each submitted additional briefing, and the motions are now ripe for review.

## Discussion

The defendant asks the court to dismiss this matter for lack of subject matter jurisdiction or, in the alternative, stay litigation and compel arbitration. In the absence of the Zachry Dispute Resolution Process ("DRP") agreement, it is clear that the court would be vested with subject matter jurisdiction over the plaintiff's federal claims under the WARN Act, ERISA, COBRA, and ARRA. 28 U.S.C. § 1331. However, it is not clear whether the existence of a contractual agreement to arbitrate divests the court of jurisdiction to hear the matter.

While the Federal Arbitration Act ("FAA") requires a district court to stay the trial of any action referable to arbitration under a written agreement, the FAA also allows the court to retain some authority over a matter that is subject to arbitration. See, e.g., Bayer CropScience AG v. Dow AgroSciences LLC, No. 2:12cv47, 2012 WL 2878495, at *7 (E.D. Va. July 13, 2012) (noting that the FAA requires a court to stay, rather than dismiss outright, an action subject to arbitration, and further permits a district court to compel arbitration by court order); see also DiMercurio v. Sphere Drake Ins., PLC, 202 F.3d 71, 78 (1st Cir. 2000) ("Because the term 'subject-matter jurisdiction' is 'often misused,' cases to the effect that a court lacks authority to act in the face of a valid arbitration agreement do not necessarily implicate 'jurisdiction in the basic sense, but may stand merely for the proposition that if either party seasonably claims his right to arbitrate, the agreement must be recognized.'") (internal citations omitted).

In Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., the United States Court of

Appeals for the Fourth Circuit suggested that a motion to dismiss in favor of arbitration should be treated as a motion to stay litigation and compel arbitration. 252 F.3d 707, 709–10 (4th Cir. 2001). Therefore, the court will address the defendant's alternative motion to stay litigation and compel arbitration.

I.      **Defendant's Motion to Stay Litigation and Compel Arbitration**

The Federal Arbitration Act ("FAA") reflects "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. When a party refuses to arbitrate despite the existence of a valid and enforceable written agreement to arbitrate, the aggrieved party may petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The court has previously recognized that "[a]lthough the FAA does not expressly identify the evidentiary standard a party seeking to avoid arbitration must meet, 'courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure.'" S. Elec. Servs., Inc. v. Cornerstone Det. Prods., Inc., 2010 WL 2233664, at * 3 (W.D. Va. June 3, 2010) (citing Fed. R. Civ. P. 56(e); Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002). "Thus, as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying

4

the facts upon which the right to arbitration rests; instead, the party must identify specific evidence demonstrating a material factual dispute." Id.

"In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [plaintiff] to arbitrate the dispute.'" Adkins v. Labor Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). Here, only the second factor is in dispute.

As a preliminary matter, the plaintiff raises some doubt as to whether he ever signed a written agreement to be bound by the defendant's Dispute Resolution Process ("DRP"), which includes binding arbitration as its final step. The plaintiff also argues that the arbitration provision in the DRP is unenforceable, and further argues that even if the arbitration provision is enforceable, the scope of the agreement does not cover Green's ERISA and COBRA claims. The court will address each argument in turn.

### A. Existence of Written Arbitration Agreement

"It is [] well established that the obligation to arbitrate is a creature of contract and that a party cannot be required to submit to arbitration unless he has agreed to do so in a contract." Marrowbone Dev. Co. v. Dist. 17, United Mine Workers of America, 147 F.3d 296, 300 (4th Cir. 1998).

Here, the defendant asserts that Green signed an agreement providing that all employment disputes would be resolved through the defendant's Dispute Resolution Process ("DRP"), which includes binding arbitration as its final step. Def.'s Ex. A, Nov. 22, 2011,

Docket No. 7-4. The plaintiff swears that while the DRP agreement bears the signature "Teddy A. Green, Jr.," he cannot confirm that it is his signature on the document. Pl.'s Ex. 1, Jan. 26, 2012, Docket No. 22-1. He also observes that the DRP agreement allegedly bearing his signature is entitled "Zachry Construction Corporation Dispute Resolution," while Green worked for Zachry Industrial, Inc. Id. For these reasons, the plaintiff contends that there is no written agreement to arbitrate.

Despite these assertions, the plaintiff concedes that he signed an employment application for a full-time position with Zachry Industrial, Inc. Def.'s Ex. 5A, Dec. 20, 2011, Docket No. 13-6. The first page of that employment application, which the plaintiff admits bears his signature, clearly states:

> I agree to be bound by and accept as a condition of employment the terms of the Zachry Industrial, Inc. (San Antonio) Dispute Resolution Process (ZII DR Process), which are incorporated herein by reference. I understand that ZII DR Process requires, as its last step, that employment disputes regarding legally protected rights be submitted to binding arbitration instead of the court system.

Id. The second page of the signed employment application states:

> Zachry has in place a Dispute Resolution Process ("the DRP") that applies to all employees and applicants for employment. By signing below, I as an applicant for employment, agree to be bound by and accept the terms of the Zachry DRP, which are incorporated herein by reference. I acknowledge that I was provided a written copy of the DRP program if I so requested and that I have reviewed and understand the DRP agreement. I understand that the Zachry DRP requires, as its last step, that all employment disputes regarding legally protected rights under state or federal law, including Zachry's decision to hire or not to hire me, will be exclusively and finally settled by binding arbitration administered by the American Arbitration Association rather than the court system.

Id. Therefore, the court finds and concludes, as a matter of law, that the plaintiff expressed his willingness and agreement to be bound by the defendant's Dispute Resolution Process.

## B. Enforceability of Written Arbitration Agreement

The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). "This savings clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1746 (2011) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). The plaintiff provides three grounds for not enforcing the DRP agreement, none of which have merit. The court will address each in turn.

First, the plaintiff argues that the defendant's DRP agreement is unenforceable because it violates the National Labor Relations Act ("NLRA") and the Norris-LaGuardia Act of 1932 ("NLGA"). Section 7 of the NLRA provides, in pertinent part, as follows:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . .

29 U.S.C. § 157. Section 8(a)(1) states that "[i]t shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7 of the NLRA]." 29 U.S.C. § 158(a)(1). The NLGA provides that workers should "have full freedom of association," and "shall be free from the interference, restraint, or coercion of employers of labor . . . in [] concerted activities for the purpose of . . . mutual aid or protection." 29 U.S.C. § 102.

Relying heavily upon a decision issued by the National Labor Relations Board ("the Board") in D.R. Horton, Inc. (Case No. 12-CA-25764, 357 NLRB No. 184 (2012)), the plaintiff asserts that these two statutes prohibit an employer from requiring an employee, as a condition of

employment, to sign an agreement that requires the employee to pursue employment-related claims individually in arbitration. Similar to the instant case, the employer in D.R. Horton, Inc. "require[d] employees [], as a condition of their employment, to sign an agreement that preclude[d] them from filing joint, class, or collective claims addressing their wages, hours or other working conditions against the employer in any forum, arbitral or judicial." 357 NLRB No. 184, at *1. The Board found that the agreement violated Sections 7 and 8(a)(1) of the NLRA by requiring only individual arbitration of employment-related claims. See generally id.

The Board's decision was appealed to the United States Court of Appeals for the Fifth Circuit, and the instant action was held in abeyance pending a decision by the Fifth Circuit. On appeal, the Fifth Circuit reversed the Board's decision, in part, finding that the Board had failed to give adequate consideration to the Federal Arbitration Act. "The NLRA should not be understood to contain a congressional command overriding application of the FAA." Id. at 362. Rather, the Fifth Circuit found that the "FAA has equal importance in our review," and "[r]equiring a class mechanism is an actual impediment to arbitration and violates the FAA." Id. at 357, 359–60 (citing Concepcion, 131 S. Ct. 1740). Because "the overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms," the Court determined that the arbitration agreement, including the class waiver, "must be enforced according to its terms." Id. at 359, 362; see also id. at 362 n.10 ("The Board also relied on the Norris-LaGuardia Act ("NLGA") to support its view that the FAA must give way to the NLRA. . . .We also conclude that the Board's reasoning drawn from the NLGA is unpersuasive.").

Persuaded by the Fifth Circuit's reasoning in D.R. Horton, Inc. and the weight of available authority, the court finds that the Zachry DRP agreement, which contains an implied class waiver, does not violate the NLRA or NLGA. See D.R. Horton, Inc., 737 F.3d at 362

("Every one of our sister circuits to consider the issue has either suggested or expressly stated that they would not defer to the NLRB's rationale, and held arbitration agreements containing class waivers enforceable.").

Next, the plaintiff argues that the arbitration agreement is unenforceable because it is unconscionable. "Unconscionability is a narrow doctrine whereby the challenged contract must be one which no reasonable person would enter into, and the inequality must be so gross as to shock the conscience." Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 305 (4th Cir. 2001) (internal quotation marks and citations omitted). Here, Green asserts that the DRP agreement is unconscionable because "it is prohibitively expensive and requires the former employees to forfeit substantive rights guaranteed under the WARN Act, ERISA, and COBRA," including the "statutory right to recover reasonable attorney's fees" and the "right to adjudicate as a class." Pl.'s Opp'n Mem. 12, Jan. 26, 2012, Docket No. 22; Pl.'s Notice of Supplemental Authority 8, Feb. 4, 2014, Docket No. 35. This assertion is belied by the express terms of the DRP, which provides:

> The AAA National Rules for the Resolution of Employment Disputes ("AAA Rules") will govern resolutions submitted for External Review and the allocation of costs and expenses, except as agreed and set forth below. The employee will be responsible for paying a $150 filing fee if the employee files for or initiates either mediation or arbitration. The employee must pay an additional $150 filing fee if the employee chooses to seek arbitration after mediation. <u>Zachry will pay the balance of the filing fee that is charged by the AAA, as well as the daily administration fees, the cost of the hearing location and the compensation and travel expenses of the mediator or arbitrator.</u> You will be responsible for any expenses you elect to incur during the mediation or arbitration process such as attorney's fees, discovery costs, etc.

Def.'s Exhibit C at 6, Feb. 7, 2012, Docket No. 23-4 (emphasis added). Given that the company bears the brunt of the financial burden when an employee files a claim, Green has failed to show that the DRP agreement is so grossly unfair that no reasonable employee would agree to be

9

bound by its terms.

With respect to Green's assertion that employees must "forfeit substantive rights," the DRP further states:

> The arbitrator's decision is based on the facts and evidence presented by the employee and the company and will follow applicable federal and state laws. The arbitrator can award any legal remedy that might have been available in court.

Id. at 7. As the DRP agreement makes clear, the employee maintains all of his substantive rights and remedies under the law, including any award of attorney's fees that might be available under the WARN Act, ERISA, COBRA, or ARRA. Although the plaintiff correctly asserts that the DRP agreement requires individual arbitration, it is well settled that "the right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims." Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 332 (1980). Since the DRP is not prohibitively expensive and does not require the employee to forfeit any substantive right, the court finds that the DRP agreement is not unconscionable.

Finally, the plaintiff argues that the Dispute Resolution Process agreement is unenforceable because it is a contract of adhesion. Under Virginia law, a contract of adhesion is "a standard form contract, prepared by one party and presented to a weaker party, usually a consumer, who has no bargaining power and little or no choice about the terms." Philyaw v. Platinum Enters., Inc., 54 Va. Cir. 364, 366 (2001). Green argues that the DRP agreement is an unenforceable contract of adhesion because Zachry used its "higher bargaining position" to "require[] that their employees either go without a job or submit to the terms that the Corporation had complete control over." Pl.'s Opp'n Mem. 16, Jan. 26, 2012, Docket No. 22. This argument is unavailing.

An arbitration agreement between employer and employee is not an unenforceable

10

contract of adhesion merely because the employer requires the employee to agree to arbitrate employment-related disputes as a condition of employment. See, e.g., Bennett v. Dillard's, Inc., 849 F. Supp. 2d 616, 620 (E.D. Va. 2011) (finding that an arbitration agreement between employee and employer was not a contract of adhesion where the employee "had the right to work elsewhere, rather than accept [the employer's] terms of employment"); Senture, LLC v. Dietrich, 575 F. Supp. 2d 724, 727 n.1 (E.D. Va. 2008) ("If an employee has the freedom to consider employment elsewhere and is not bound to continue working for his current employer, an employment agreement will not be considered an adhesion contract.").

Relying on Cooper v. MRM Inv. Co., a decision by the United States Court of Appeals for the Sixth Circuit, the plaintiff argues that the DRP agreement is a contract of adhesion because Green would be "unable to find suitable employment if [he] refused to sign [Zachry's DRP] agreement." 367 F.3d 493, 502 (6th Cir. 2004). Here, as in Cooper, Green "did not allege that [he] looked for comparable jobs but was unable to find one." Id. at 502. Rather, he offered employment statistics showing that the unemployment rate in Covington, Virginia was 2.1% higher than the statewide average. Pl.'s Opp'n Mem. 16–17, Jan. 26, 2012, Docket No. 22. "Generalizations about employer practices in the modern economy cannot substitute for such evidence." Cooper, 367 F.3d at 502. Since Green had the freedom to consider employment elsewhere, it cannot be said that the plaintiff had "little or no choice about the terms" of his employment relationship with Zachry. Philyaw, 54 Va. Cir. at 366. Therefore, the DRP agreement is not an unenforceable contract of adhesion.

C.    **Scope of Written Arbitration Agreement**

Having determined that the parties' written arbitration agreement is valid and enforceable, the court must now determine whether the agreement covers the plaintiff's claims.

11

The FAA creates a strong presumption in favor of enforcing arbitration agreements and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25; see also Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) ("[T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.").

Here, the Zachry DRP agreement provides as follows:

> Both Zachry and the employee agree to resolve any and all claims, disputes or controversies arising out of or relating to any application for employment, to the terms and conditions of employment, and/or to the cessation of employment exclusively by final and binding arbitration administered by the AAA under its AAA rules.

Def.'s Exhibit C at 8, Feb. 7, 2012, Docket No. 23-4. The court finds—and the plaintiff does not dispute—that Green's WARN Act claim falls squarely within the scope of this agreement. However, Green argues that the DRP agreement does not apply to his ERISA, COBRA, and ARRA claims. For support, Green relies on Simon v. Pfizer, Inc., a case in which the United States Court of Appeals for the Sixth Circuit held that the plaintiff's ERISA and COBRA claims were not within the scope of the arbitration provision at issue. 398 F.3d 765, 776 (6th Cir. 2005). The arbitration clause at issue in Simon was narrow, encompassing only two types of disputes – "disputes regarding the application of Section 20 dealing with Constructive Termination and disputes concerning the application of Section 14 dealing with Termination for Just Cause." Id. at 775–76. In light of the broad arbitration clause in the instant case, the plaintiff's reliance on Simon is misplaced.

While the Sixth Circuit ultimately found that the narrow arbitration provision at issue in Simon did not cover ERISA or COBRA claims, the Court also determined that "the majority of

courts considering the issue have held that disputes arising under ERISA, including COBRA claims, are subject to arbitration under the FAA." Id. at 774 (citing various cases). The Sixth Circuit also recognized that "[w]hen faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration." Id. at 775 (emphasis in original). "'[O]nly an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by arbitrators.'" Id. (quoting Masco Corp. v. Zurich Am. Ins. Co., 382 F.3d 624, 627 (6th Cir. 2004).

Here, unlike in Simon, the DRP agreement is broad, encompassing "any and all claims . . . arising out of or relating to . . . the terms and conditions of employment, and/or to the cessation of employment." Def.'s Exhibit C at 8, Feb. 7, 2012, Docket No. 23-4. The plaintiff's ERISA, COBRA, and ARRA claims all stem from the defendant's alleged failure to comply with various notification and reporting requirements triggered by the cessation of Green's employment with the defendant. As such, the claims fall within the scope of the broad DRP agreement, and are, therefore, subject to resolution "exclusively by final and binding arbitration." Id.

Additionally, the plaintiff contends that his benefits-related claims are outside the scope of the DRP agreement because the agreement uses precatory language: "You can use the DR Process for concerns about benefit plans." Id. at 10 (emphasis added). In light of the clear and comprehensive DRP agreement, this argument is not persuasive. While the company encourages employees to attempt to resolve benefit-related disputes through a specially tailored method before using the standard DR Process, there is no indication that the parties' agreement allows for litigation in lieu of arbitration. Rather, the DRP agreement makes clear that "[t]he DR

13

Process is the exclusive means of resolving workplace disputes, including legally protected rights." Id. at 3. For these reasons, the scope of the parties' broad arbitration agreement includes the plaintiff's ERISA, COBRA, and ARRA claims, in addition to his WARN Act claim.

### D. Proper Remedy

For the reasons stated, all of the plaintiff's claims are "referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. The United States Court of Appeals for the Fourth Circuit has not resolved the question of whether a stay or dismissal is warranted when all issues presented in a lawsuit are subject to arbitration. The Fourth Circuit recently acknowledged that "[t]here may be some tension between our decision in Hooters—indicating that a stay is required when the arbitration agreement 'covers the matter in dispute'—and Choice Hotels—sanctioning dismissal 'when all of the issues presented . . . are arbitrable.'" Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 376 n.18 (4th Cir. 2012) (quoting Hooters, Inc. v. Phillips, 173 F.3d 933 (4th Cir. 1999); Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709–10 (4th Cir. 2001)). The Fourth Circuit further noted that "[o]ur sister circuits are divided on whether a district court has discretion to dismiss rather than stay an action subject to arbitration." Id. In light of this uncertainty, the case will be stayed pending arbitration pursuant to the express requirement of the Federal Arbitration Act. 9 U.S.C. § 3.

## II. Plaintiff's Motion for Leave to Add Party Plaintiffs and Amend Complaint

Green's proposed amended complaint includes factual allegations regarding two individuals who wish to be added as party plaintiffs, but sets forth only the same WARN Act, ERISA, COBRA, and ARRA claims that the court found to be subject to a valid and enforceable arbitration agreement. Since this case will be stayed in favor of arbitration, the plaintiff's motion for leave to add party plaintiffs and amend the complaint will be denied.

## Conclusion

For the reasons stated, the court finds and concludes that all of the plaintiff's claims are subject to a valid and enforceable written arbitration agreement. Therefore, the court will grant the defendant's alternative motion to stay litigation and compel arbitration, and deny the plaintiff's motion for leave to add party plaintiffs and file an amended complaint.

Recognizing that the plaintiff may prefer to forego his employment-related claims, rather than arbitrate on an individual basis, the plaintiff is directed to advise the court within 120 days whether he intends to pursue his claims through individual arbitration consistent with the Dispute Resolution Process. Unless the plaintiff requests an extension, or absent a showing of good cause for failure to proceed, the case will be dismissed at the end of the 120 days for failure to prosecute based on the defendant's earlier motion to dismiss. Fed. R. Civ. P. 41(b).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 25th day of March, 2014.

Chief United States District Judge